[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON POST-JUDGMENT MOTIONS
Pending before the court are motions filed by the plaintiff, Geraldine Cassens, to hold the defendant, Craig Cassens, in contempt and to modify the child support paid by the defendant to the plaintiff. The parties' marriage was dissolved on January 11, 1984 in the state of Massachusetts. There are two children issue of the marriage: Kayci, born on November 18, 1977, and Cori born on December 11, 1980. Both parties now reside in the State of Connecticut. The Massachusetts decree has been filed in Connecticut. The parties agree that the substantive law of Massachusetts controls the disposition of the pending motions.
In regard to the motion for contempt, the plaintiff claims that the defendant has not paid her child support from August 1986 to August 1998. The defendant resumed these payments soon after this enforcement action was instituted in 1998.
The settled law is that in order to hold the defendant in civil contempt, the court must find that the defendant wilfully violated a clear and unambiguous court order. See Larson v.Larson, 551 N.E.2d 43, 44 (1990) ("[I]n order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience"). Substantially for the reasons advanced in the defendant's Trial Brief, the motion for contempt is denied.
The child support order provides that the defendant is required to pay child support in the amount of $35 a week, reduced by 50% when the oldest child becomes emancipated as defined by the decree. In relevant part, the child support order provides the following: "Husband and Wife specifically agree that each retains the right to seek agreement of the other party or otherwise obtain an order from a Court of competent jurisdiction to change the amounts or scheduling of these payments for the support of the minor children."
The plaintiff's position is that the defendant wilfully failed to pay the child support despite her requests that he do so. According to her testimony, the defendant refused her demands for payment by saying that he had other expenses and that if she insisted that he pay child support, he would refuse to see the children. On the other hand, the defendant testified that although he failed to make regular $35 weekly payments, he made other substantial contributions for the children's benefit exceeding $1,800 a year that were accepted by the mother. CT Page 15338 According to him, he and the plaintiff agreed that he would support the children by paying various expenses for the children, rather than making weekly child support payments. He further testified that the plaintiff never requested a change from this arrangement until after the recent death of his father and the prospect that he would receive an inheritance.
Thus, there are factual disputes between the parties about whether the payments made by the defendant to the plaintiff on average actually exceeded $1,800 a year, and whether these payments were accepted by the plaintiff without complaint and with either an implicit or explicit understanding that they satisfied the court ordered child support obligation. Such an understanding or agreement is significant because the divorce decree expressly contemplates that the parties may agree to change the amount or schedule of the child support payments. On the basis of the parties' testimony, candor, demeanor, as well as the overall consistency (or in some instances, inconsistencies) between their positions and the evidence, the court credits the father's testimony and resolves these factual disputes in his favor. The court finds that there was no violation of the court order because the parties reached an understanding regarding the support to be paid by the defendant to the plaintiff that varied from the amount or schedule of these payments as set out in the divorce decree. For similar reasons, the court further finds that the evidence fails to establish a wilful violation of the court order. See generally, Lownds v. Lownds, 41 Conn. Sup. 100 (1988) (a wilful violation of a child support order is absent when the payor has a bona fide belief that the order has been modified.)
Alternatively, the court finds that the evidence establishes the elements of both waiver and estoppel under Massachusetts law and that the plaintiffs claim for past child support is precluded on these grounds. See generally, Boston Helicopter Charter, Inc.v. Agusta Aviation Corp., B.L., 767 F. Sup. 363, 372 (D. Mass. 1991) ("According to Massachusetts law, `waiver' is the voluntary relinquishment of a known right"); Turnpike Motors v. NewburyCorp. , 596 N.E.2d 989, 991 (Mass. 1992) ("The essential factors giving rise to an estoppel are: (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is make. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission.") CT Page 15339
The mother's conduct since the filing of the judgement would allow any reasonable person to conclude that she acquiesced and agreed to the father's expenditures for the children's benefit in lieu of the regular support payments. The father did in fact reasonably rely on this conduct to conclude that such an arrangement was mutually acceptable to the parties. He certainly relied on the conduct to his detriment because he could have chosen not to make these expenditures for the children inaddition to the regular child support if he had known that the plaintiff was insisting on receiving both. This choice is no longer available to him as a result of the plaintiff's actions.
The plaintiff erroneously claims that the issue of waiver was not asserted by the defendant. The defendant's pre-trial memorandum explicitly contends that the "plaintiff's claim is barred due to equitable doctrines of latches (sic) and waiver." See Pre-Trial Memorandum, p. 3. Moreover, the court explicitly advised the parties that waiver and estoppel were issues in the case and gave the parties the opportunity to address these defenses.
The court also emphasizes that the finding that principles of estoppel and waiver are applicable here is not based solely on the wife's failure to timely insist upon strict performance of the terms of the decree, and therefore, the provision of the decree precluding waiver for this reason alone is not controlling. (Section 2.08 of the decree provides that "[t]he failure of Husband and Wife to insist in any instance upon the strict performance of any of the terms hereof shall not be construed as a waiver of such term or terms for the future and the same shall nevertheless continue in full force and effect.") The court rejects the plaintiff's claim that she either repeatedly or even periodically requested the court ordered payments and was frustrated in her efforts by the defendant's refusal or intimidation. Viewing the plaintiff's testimony charitably, she voluntarily chose by clear and unequivocal conduct to agree to accept payments from the defendant that varied from the court decree in order to avoid rancor between her and the defendant or possible disruption of the relationship between the defendant and the children. As this was the decision she chose to make, she must now find herself bound to it. She testified that she instituted these proceedings at this time because the children are adults and the defendant is likely to receive an inheritance, but under these circumstances, she cannot CT Page 15340 now reverse herself even for these reasons and seek retrospective enforcement of a decree she consciously and deliberately agreed to forego over the past twelve years.
The defendant also contends that the plaintiff's claim for back child support is barred by laches. In response, the plaintiff relies on Child Support Enforcement Division of Alaskav. Brenkle, 675 N.E.2d 390 (Mass. 1997), to argue that under Massachusetts law the doctrine of laches is inapplicable in contempt proceedings seeking recovery of past due child support. The plaintiff's reliance on Brenkle is misplaced because Brenkle
is distinguishable from the issues presented here. In Brenkle, the claimant mother instituted an action to recover child support arrearages pursuant to Alaskan enforcement procedures and judgment entered against the payor father. The claimant then instituted proceedings in Massachusetts, the payor's place of residence, to enforce this judgment under the Uniform Reciprocal Enforcement of Support Act. The Massachusetts Supreme Court inBrenkle held that since the child support payments had become "vested" as a judgment, a statute of limitations defense governing the enforcement of judgments was available, but a defense of laches was not. Child Support Enforcement v. Brenckle, supra 675 N.E.2d at 396-397. In the instant case, as compared toBrenckle, the plaintiff's claim for past due support has not been reduced to a judgment through an enforcement proceeding.
Although some authorities hold that an award of periodic child support is an absolute debt based on a judgment making a defense of laches unavailable in an enforcement action to collect past due support; see generally, 24A Am.Jur.2d, Divorce 
Separation, Sec. 1063; 5 ALR 4th 1015, Sec. 4; Massachusetts cases generally recognize that a laches defense may be asserted by a defendant in contempt proceedings for past due support. These cases indicate that acquiescence by the plaintiff and prejudice to the defendant are necessary elements of a laches defense. See, e.g., Bullock v. Zeiders, 428 N.E.2d 311, 314
(1981). Particularly in support cases, the case law further indicates that the "issue of delay is not considered separately as one of laches but is `subsumed in whether the circumstances of the parties [have] so changed as to require a modification of the earlier judgement.'" Kennedy v. Kennedy, 457 N.E.2d 1133, 1138
(Mass. 1983), quoting Spiliotis v. Campbell, 431 N.E.2d 591, 592
(Mass. 1981). Thus the issue of laches is intertwined with the issues of waiver and modification. In light of this court's previous ruling on waiver and estoppel and the court's following CT Page 15341 ruling on the motion to modify, the disposition of the laches defense shall be deemed subsumed as part of the court's disposition of the waiver issue.
The plaintiff also seeks to hold the defendant in contempt of court for failing to pay his share of the children's college expenses. As previously stated, a finding of contempt must be based on a defendant's wilful violation of a clear and unambiguous order. In the instant case, the provision in the divorce decree regarding the children's college expenses is as follows:
 "Recognizing the present financial circumstances of each party. Husband and Wife defer specific agreement on sharing the education expenses of their minor children. Husband and wife agree in principal that their children shall be afforded the advantage of such post-high school education as may be appropriate for the interests, aptitudes, and abilities of each child, consistent with the financial abilities and resources available to each party. To the extent they may become financially able (in view of their then-existing income, assets, needs, and obligations) at the time such education expenses arise, the parties shall share equally such expenses, including tuition, room and board while residing away from both parties, laboratory and special fees, books, application and registration fees, and reasonable transportation."
First, it is clear that when the divorce judgement entered, the parties did not enter into any agreement specifically stating the amount or the percentage of each party's responsibility for the children's college expenses. A statement of principal or intent cannot be construed as a clear, unambiguous command on which contempt sanctions may be based.
The plaintiff heavily relies on the language that the parties "shall share equally such expenses" for the children's college education, but this directive is expressly conditioned on the extent to which the parties "may become financially able (in view of their then-existing income assets, needs, and obligations)." The record indicates that defendant has contributed to the children's education and the plaintiff's claim is that this contribution has been insufficient. Assuming arguendo that this conditional directive represents an unequivocal command, the court has not received sufficient information to indicate that CT Page 15342 the parties' income, assets, needs, and obligations are such that the father's contributions have been so deficient that they constitute a wilful violation of any obligation required under the divorce decree.
The plaintiff also seeks to hold the defendant in contempt of court for failing to pay his share of medical expenses paid on behalf of the children. This claim was denied on the record during the hearing on the motion on the ground that the plaintiff failed to establish any wilful failure to pay on the part of the defendant.
In regard to the motion to modify the child support, this motion is granted. The court finds that the evidence is sufficient to establish that the remaining minor child is domiciled in the home of the plaintiff, that this minor child is primarily dependent upon the plaintiff for maintenance, and that a substantial change of circumstances has occurred since the entry of judgment when the defendant was unemployed. The court rejects the defendant's arguments to the contrary.
The record indicates that the plaintiff has a gross income of $2,655 and the defendant has a gross income of $906. The Massachusetts child support guidelines worksheet presented by the plaintiff is accepted and the court orders the defendant to pay child support in the amount of $154 a week. This modification of $154 a week shall be retroactive to the date of the service of the motion to modify on the defendant or October 2, 1998, with the defendant receiving credit for the support payments made by him since the institution of this lawsuit. See generally,Smith-Clarke v. Clarke, 691 N.E.2d 596, 597 (Mass.App.Ct. 1998) (child support modification may be made retroactive to the date of notice of the complaint). The arrearage created as a result of this retroactive modification shall be paid at the rate of $25 a week. These payments totaling $179 a week shall be made though a wage withholding in the manner authorized by law.
So ordered November 17, 1999.
Stevens, J.